# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

POLICARPIO MEDINA,

          Plaintiff,

   vs.

DR. CHEN, et al.,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)

1:10cv00683 DLB PC

ORDER REGARDING  DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

(Document 32)

Plaintiff Policarpio Medina ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on April 19, 2010.  On March 14, 2011, the Court issued an order finding a cognizable Eighth Amendment deliberate indifference claims against Defendants Dr. Chen, Dr. Shittu, Chief Medical Officer Dr. Sherry Lopez and Psychiatrist Technician Mean, and a First Amendment retaliation claim against Defendant Dr. Chen.  Plaintiff filed a First Amended Complaint ("FAC") on April 7, 2011, alleging the Eighth Amendment and First Amendment claims, as well as claims for medical malpractice and intentional infliction of emotional distress against Dr. Chen.[1]

---

[1]  The parties consented to the jurisdiction of the United States Magistrate Judge.

On July 23, 2012, Defendants filed this motion for summary judgment.[2]

On October 9, 2012, after Plaintiff failed to file an opposition, the Court ordered Plaintiff to either file an opposition to the motion, or a statement of non-opposition, within 21 days.  On October 24, 2012, Plaintiff filed a request for a 60 day extension of time.  He indicated that he was working on his opposition, but needed additional time to complete it.  The Court granted his request on October 29, 2012.  On December 26, 2012, Plaintiff requested an additional 30 day extension, explaining that he had undergone back surgery on November 16, 2012, and was continuing to recover.  On December 27, 2012, the Court granted the request and informed Plaintiff that no further extensions would be granted without a showing of good cause.  More than 30 days have passed and Plaintiff has not filed an opposition, a statement of non-opposition, or otherwise communicated with the Court.  Accordingly, the motion is deemed submitted pursuant to Local Rule 230(l).

## I.      LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id. at 324.  Indeed, summary judgment should be entered, after adequate time for

---

[2]  In Defendants' July 23, 2012, notice, filed concurrently with their motion for summary judgment, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment.  Klingele v. Eikenberry, 849 F.2d 409, 411-412 (9th Cir. 1988).

discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586, n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2002); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

trial.'"  Matsushita, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963 amendments).

In resolving a motion for summary judgment, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)).

Finally, to demonstrate a genuine dispute, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586-87 (citations omitted).

The instant motion for summary judgment is unopposed.  A district court may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition. Cristobal v. Siegel, 26 F.3d 1488, 1494–95 & n. 4 (9th Cir.1994) (unopposed motion may be granted only after court determines that there are no material issues of fact).  The Court may, however, grant an unopposed motion for summary judgment if the movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact.  Henry v. Gill Industries, Inc., 983 F.2d 943, 950 (9th Cir.1993) (same).

## II.   UNDISPUTED FACTS

Plaintiff did not file an opposition, and Defendants' statement of facts is therefore considered undisputed.[3]

---

[3]   When a litigant, including a pro se litigant, fails to file an opposition to a summary judgment motion, or files an opposition that does not contain adequate references to the record identifying evidence that the opposing party contends is sufficient to withstand summary judgment, a district court does not have a duty to search the record for evidence that would create a factual dispute.  Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir.2001).

Plaintiff has been in the Mental Health Care Delivery System at the Correctional Clinic Case Management System throughout his incarceration, and he has been diagnosed with major depressive disorder, post-traumatic stress syndrome and anxiety.  Pl.'s Dep. 11:9-25.

Plaintiff arrived at Kern Valley State Prison ("KVSP"), where the events complained of occurred, in November 2005.  Pl.'s Dep. 16:19-21.  Prior to arriving at KVSP, Plaintiff was prescribed ibuprofen and naproxen for lower back pain.  Pl.'s Dep.  30:21-25.

After arriving at KVSP, Plaintiff continued to receive ibuprofen and naproxen for lower back pain.  Pl.'s Dep. 31:1-3.  Plaintiff requested to see a doctor and informed the doctor that his pain medication was not working.  His medication was changed to Robaxin for 90 days.  Pl.'s Dep. 32:5-11.

On November 8, 2007, Plaintiff underwent a lumbar spine x-ray, which was normal.  Defs.' Ex. A, at 322.  Plaintiff reported that the Robaxin did not have any effect on his pain.  Pl.'s Dep. 32:12-25.

On December 10, 2007, Plaintiff saw Dr. Chen for the first time.  Plaintiff complained of lower back pain and Dr. Chen prescribed Salsalate.  Defs.' Ex. A, at 53; Chen Decl. ¶ 2.

Plaintiff returned to Dr. Chen on January 7, 2008.  He complained of lower back pain and radiculopathic pain.  Dr. Chen prescribed Gabapentin.  Defs.' Ex. A, at 50; Chen Decl. ¶ 3.

On March 8, 2008, Plaintiff saw Dr. Chen and reported that the pain was better.  Plaintiff asked to increase the Gabapentin dose, and Dr. Chen increased it.   Defs.' Ex. A, at 44; Chen Decl. ¶ 4.  On March 26, 2008, Plaintiff was referred to physical therapy for his lower back pain.  Defs.' Ex. A, at 43; Chen Decl. ¶ 5.

On April 17, 2008, Plaintiff returned to Dr. Chen and complained of severe pain in his lower back.  Dr. Chen increased Plaintiff's Gabapentin dose.  Defs.' Ex. A, at 42; Chen Decl. ¶ 5.

Plaintiff returned to Dr. Chen on May 19, 2008.  Plaintiff reported that he still had lower back pain and that the medication was ineffective.  Defs.' Ex. A, at 39, 123; Chen Decl. ¶ 6.  Plaintiff told Dr. Chen that he had taken Tramadol at another prison, that it was helpful, and that he wanted to get back on it.  Defs.' Ex. A, at 123; Chen Decl. ¶¶ 6,7.  Plaintiff also told Dr. Chen that he had filed a "602" because the medication prescribed was not helping his pain.  Chen Decl. ¶ 7.  On May 19, 2008, Dr. Chen prescribed 50 mg. of Tramadol for six months. Defs.' Ex. A, at 39, 123; Chen Decl. ¶ 8.  At that time, Plaintiff was not on Effexor.  Defs.' Ex. A, at 31-34; Chen Decl. ¶ 8.

Plaintiff testified during his deposition that he had never taken Tramadol before his May 19, 2008, appointment with Dr. Chen, and that he requested it because people on the yard who were on Tramadol reported a positive response.  Pl.'s Dep. 35:12-17.  Even though Tramadol is a non-narcotic pain killer, it can have some opiodic euphoric side effects similar to narcotic pain killing drugs such as Vicodin.  Inmates seeking a pecuniary gain, or "recreational high," commonly request it.  Chen Decl. ¶ 12; Lopez Decl. ¶ 19.

Plaintiff alleges in his verified FAC that he filed an inmate appeal against Dr. Chen on February 9, 2008.  He contends that he was interviewed by Dr. Chen at the second level of review, and that Dr. Chen told him at that time that Plaintiff had "602 the wrong person" and that he "would not forget about this."  FAC ¶¶ 15-17.

The inmate appeal that Plaintiff filed on February 9, 2008, did not mention Dr. Chen or Tramadol.  Todd Decl., Ex. B.  Dr. Chen did not review Plaintiff's appeal at any level and he was not aware of the appeal during the May 19, 2008, appointment.  Todd Decl., Ex. B; Chen Decl. ¶ 9.

On November 13, 2008, two days before Plaintiff's Tramadol prescription was to expire, Dr. Schaefer approved a refill of Tramadol for three months.  Defs.' Ex. A, at 32.  Plaintiff

received Tramadol from November 13, 2008, through November 20, 2008.  Defs.' Ex. A, at 226, 228; Chen Decl. ¶ 10.

On November 17, 2008, Plaintiff wrote a Health Care Request stating :  "My pain medication (Tramadol) has expired (11/15/08).  I need to see the Dr. to get it renewed.  I haven't been able to sleep because of the pain."  Defs.' Ex. A, at 109.

On November 19, 2008, Plaintiff filed an inmate appeal requesting that his Tramadol be re-ordered.  Todd Decl. Ex. A, at 12.

On January 18, 2009, Plaintiff wrote a Health Care Request stating: "I am currently taking pain medication for the severe pain I suffer from.  Recently the medication has lost it's [sic] effect.  I haven't been able to sleep from the pain, and/or walk, get out of bed, or walk down the stairs.  I need an MRI."  Defs.' Ex. A, at 105.  On February 4, 2009, Plaintiff wrote another Health Care Request stating: "I am experiencing severe pain and numbness on my left foot, leg and lower back."  Defs.' Ex. A, at 103.  At the time of both requests, Plaintiff was taking Tramadol and Gabapentin.  Defs.' Ex. A, 219, 222.

On January 14, 2009, Dr. Syed in Mental Health prescribed Effexor.  Defs.' Ex. A, at 28, 209, 225, 453.

On February 16, 2009, Plaintiff's prescription for Tramadol ended.  Defs.' Ex. A, at 28, 219.  Plaintiff alleges in his FAC that on February 20, 2009, he began to have withdrawal symptoms.  He testified that the symptoms, including vomiting diarrhea, cold sweats and insomnia, lasted six days, to February 25 or 26, 2009.  FAC ¶ 20; Pl.'s Dep. 52:18-54:4.  Plaintiff did not inform the correctional officers of his symptoms, nor did he expressly ask to go to the medical clinic or put in a sick call slip.  Pl.'s Dep. 50:23-52:9.

On February 18, 2009, Plaintiff saw staff psychologist Dr. Gallienne.  Plaintiff reported that he was "o.k." and "good."  He also stated that he was "feelin' a little low."  Plaintiff's

appearance was within normal limits, he was cooperative and had no signs of distress. Defs.' Ex. A, at 443.

Plaintiff returned to Dr. Gallienne on February 24, 2009. His appearance was within normal limits, he was cooperative and had no signs of distress. Plaintiff was alert and oriented, with minimal signs of depression. He was lucid and advocated well for himself. Defs.' Ex. A, at 442.

Plaintiff saw Defendant Chen on February 27, 2009. He had no signs of pain, was calm and sat comfortably in a chair. Plaintiff was not in distress and spoke clearly. His temperature, pulse and blood pressure were normal. Plaintiff demanded Tramadol and told Dr. Chen that if he did not get it, he would "602" again. Dr. Chen did not prescribe Tramadol because it is contraindicated by Effexor, which Plaintiff was prescribed on January 14, 2009. Tramadol was also not medically indicated because Plaintiff had been off it for eleven days and did not appear to be in any pain whatsoever. Plaintiff's normal x-rays and other objective findings were also inconsistent with his claims of excruciating back pain. Plaintiff was prescribed Tylenol and Gabapentin. Dr. Chen did not tell Plaintiff that he remembered him from filing a prior inmate appeal. Defs.' Ex. A, at 107; Chen Decl. ¶¶ 11-12.

Dr. Chen used the skill, prudence and diligence as other members of his profession commonly possess and exercise in not renewing Plaintiff's prescription for Tramadol. He did not fall below the standard of care. Lopez Decl. ¶ 17.[4]

On February 28, 2009, Plaintiff filed a Health Services Request form stating that he was in severe pain and could not sleep, walk or stand. He said that the pain was so severe that he "was disabled from several independent functions." Defs.' Ex. A, at 102.

---

[4] Defendant Lopez is the Chief Medical Executive at KVSP. She is a Board Certified physician in internal medicine and earned her certification from the American Board of Internal Medicine in 2002. She holds a Doctor of Osteopathic Medicine degree from Western University of Health Sciences in Pomona, California, and a Doctor of Chiropractic degree from Palmer College of Chiropractic in Sunnyvale. She is also a licensed X-ray supervisor and operator and Aviation Medical Examiner. Defendant Lopez reviewed Plaintiff's medical records in making her declaration. Lopez Decl. ¶¶ 2-3.

On the same day, Plaintiff filed an inmate appeal complaining that he was in pain because Dr. Chen refused to prescribe Tramadol.  The appeal did not list any withdrawal symptoms. Todd Decl., Ex. E.

Plaintiff saw Dr. Chen again on March 27, 2009.  Plaintiff states in his FAC that he complained to Dr. Chen that his treatment was ineffective and that Salsalate was having an adverse effect on his stomach.  This is not reflected in the treatment notes.  On March 27, 2009, Plaintiff was not taking Salsalate.  FAC, at 29; Defs.' Ex. A, at 99; Chen Decl. ¶ 15.

On April 6, 2009, Plaintiff submitted a Health Care Request form indicating that he had "excruciating pain" in his lower back.  Defs.' Ex. A, at 98.

On April 11, 2009, Plaintiff saw J. Amazan, R.N.  Nurse Amazan noted that Plaintiff had a healthy appearance, and was alert and oriented, calm and cooperative.  There were no signs or symptoms of any discomfort and he was functioning normally.  Defs.' Ex. A, at 98.

Plaintiff saw Dr. Chen again on April 29, 2009.  Plaintiff reported that the Tylenol was not helping his pain.  Dr. Chen noted that Plaintiff had been on Tramadol but was taken off because of psychiatric medication combination issues.  Plaintiff had an ongoing Effexor prescription at that time.  Dr. Chen prescribed a combination of Gabapentin and Salsalate because of his Effexor use and history of hepatitis C.  Defs.' Ex. A, at 96, Chen Decl. ¶ 16.

Dr. Chen used the skill, prudence and diligence as other members of his profession commonly possess and exercise in not renewing Plaintiff's prescription for Tramadol, and in prescribing Gabapentin and Salsalate.  He did not fall below the standard of care.  Lopez Decl. ¶¶ 32, 36.

On May 19, 2009, Plaintiff was seen by R.N. Amazan.  Plaintiff was alert, oriented, calm and cooperative, with a normal appearance and no signs of discomfort.  Defs.' Ex. A, at 92.

On June 1, 2009, Plaintiff saw Dr. Shittu.  Plaintiff was in no obvious discomfort.  Dr. Shittu noted that Plaintiff's x-rays were normal and that Plaintiff was taking Gabapentin and

Salsalate.  He recommended that Plaintiff continue his medications and avoid heavy exercise. Defs.' Ex. A, at 94.

 Dr. Shittu used the skill, prudence and diligence as other members of his profession commonly possess and exercise in refusing Plaintiff's request for Tramadol and keeping him on Salsalate.  He did not fall below the standard of care.  Lopez Decl. ¶ 38.

Plaintiff underwent an MRI of his lumbar spine on December 17, 2009.  It showed mild disc protrusions at L3-4, L4-5 and L5-S1, disc desiccation at L3-4 and L4-5, posterior annular tears at L4-5 and L5-S1 and "relative attenuation of the thecal sac."  Defs.' Ex. A, at 315-316. These image findings of mild disc bulges have little clinical importance and do not account for Plaintiff's claims of excruciating pain.  Lopez Decl. ¶ 9.

Plaintiff did not suffer from excruciating back pain and displayed certain "red flags" that indicate he was manipulating staff to obtain Tramadol for non-medical reasons.  Lopez Decl. ¶¶ 5, 16.

At the time of Plaintiff's deposition, he was taking naproxen, an over-the-counter medication, for his lower back pain.  Pl.'s Dep. 7:8-8:16; Lopez Decl. ¶ 24

## III.   ANALYSIS

### A.   Eighth Amendment Claims

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must show deliberate indifference to his serious medical needs.  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)) (quotation marks omitted).  The two-part test for deliberate indifference requires the plaintiff to show (1) a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain, and (2) the defendant's response to the need was deliberately indifferent.  Jett, 439 F.3d at 1096 (quotation marks and citation omitted).

Deliberate indifference is shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference.  Id. (citation and quotation marks omitted).  Deliberate indifference may be manifested when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.  Id. (citation and quotations omitted).  Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs.  Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds*, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

Plaintiff alleges that Defendants violated the Eighth Amendment by either refusing to prescribe Tramadol, or failing to intervene and prevent further harm.  The undisputed material facts demonstrate, however, that (1) Plaintiff did not have a serious medical need; and (2) Defendants were not deliberately indifferent.

### Serious Medical Need

The undisputed facts show that Plaintiff's subjective complaints of excruciating pain are not supported by the record.  X-rays were normal, the MRI results could not have been expected to produce such severe pain and, perhaps most importantly, Plaintiff was generally without symptoms of pain during his appointments.  Similarly, Plaintiff's complaints in his inmate appeals and Health Care Requests did not align with either his complaints to his doctors or the doctors' observations.

Plaintiff also displayed numerous red-flags indicating that he exaggerated his pain for secondary gain.  For example, Plaintiff testified that he asked Dr. Chen for Tramadol because other inmates had recommended it.[5]  He also threatened to file an inmate appeal against Dr. Chen

---

[5] In his FAC, Plaintiff states that he had taken Tramadol at other institutions.  FAC ¶ 12.

if he refused to prescribe it.  On more than one occasion, Plaintiff wrote in a Health Services Request that he needed his prescription renewed, even though he was still taking the medication.

To the extent Plaintiff attempts to allege a claim based on his Tramadol withdrawals, the undisputed evidence does not show any signs of withdrawal symptoms.[6]  Although Plaintiff alleges that his withdrawal symptoms began on February 20, 2009, and lasted six days, medical appointments during that time indicated that Plaintiff's appearance was normal and he showed no signs of distress.

*Deliberate Indifference*

The undisputed facts also show that Defendants were not deliberately indifferent in refusing to prescribe Tramadol, or in failing to prevent further harm.

Plaintiff alleges that Dr. Chen failed to prescribe Tramadol on February 23, 2009, and April 20, 2009.  However, Dr. Chen did not prescribe Tramadol because Plaintiff was taking Effexor and the combination can cause serious side effects.  Moreover, as explained above, Plaintiff appeared to be exaggerating his symptoms to obtain powerful pain medication for non-medical reasons.  Plaintiff also faults Dr. Chen for prescribing Salsalate, but the facts show that he was not on Salsalate at the time of the alleged complaint.

Plaintiff alleges that Dr. Shittu was deliberately indifferent because he failed to change Plaintiff's medications.  The undisputed facts show that when Dr. Shittu examined Plaintiff, he was in no obvious discomfort.  Objecting tests did not support his complaints and he appeared to be exaggerating his symptoms.

As to Defendant Mena, Plaintiff appears to allege that Mena did not intervene when Plaintiff complained of withdrawal symptoms.  As explained above, however, the undisputed facts do not support Plaintiff's allegations of severe withdrawal symptoms.

---

[6] Defendants also argue that Plaintiff did not raise the issue of Tramadol withdrawals in his inmate appeals and it is therefore not exhausted.  However, the Court need not reach the issue because Defendants failed to bring an unenumerated 12(b) motion prior to the October 24, 2011, deadline.  Defendants do not provide any explanation or cause to modify the Discovery and Scheduling Order.

Finally, Plaintiff attempts to attach liability to Dr. Lopez because he wrote her a "letter" complaining of Dr. Chen's actions.   However, there is no respondeat superior liability under section 1983 and a supervisor or administrator may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them," <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989); <u>accord</u> <u>Starr v. Baca</u>, 652 F.3d 1202, 1205-08 (9th Cir. 2011); <u>Corales v. Bennett</u>, 567 F.3d 554, 570 (9th Cir. 2009).

Simply sending a letter does not support a presumption of knowledge.   Pursuant to <u>Iqbal</u>, Plaintiff must affirmatively allege that Defendant received the letter and knew of its contents. Moreover, having found no Eighth Amendment violation by any Defendants, Dr. Lopez cannot be held liable.

B.     <u>First Amendment Retaliation</u>

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim.  <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532 (9th Cir. 1985); <u>see also</u> <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135 (9th Cir. 1989); <u>Pratt v. Rowland</u>, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005); <u>accord</u> <u>Watison v. Carter</u>, 668 F.3d 1108, 1114-15 (9th Cir. 2012); <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009).

The undisputed facts show that Dr. Chen had valid medical reasons for not prescribing Tramadol.  The pain medication was not medically indicated and may have posed a risk if combined with Effexor.  The facts also show that Plaintiff was exaggerating his symptoms. Based on these undisputed facts, Plaintiff cannot show that Dr. Chen's refusal to prescribe

Tramadol was *because* of Plaintiff's inmate appeals, and did not reasonably advance a legitimate correctional goal (i.e., the health and safety of prisoners).

    C.    <u>Medical Malpractice</u>

"To establish a medical malpractice claim, the plaintiff must allege in the complaint: (1) defendant's legal duty of care toward plaintiff; (2) defendant's breach of that duty; (3) injury to plaintiff as a result of that breach - proximate or legal cause; and (4) damage to plaintiff." <u>Rightley v. Alexander</u>, No. C-94-20720 RMW, 1995 WL 437710, at *3 (N.D. Cal. July 13, 1995) (citing to <u>Hoyem v. Manhattan Beach School Dist.</u>, 22 Cal.3d 508, 514 (1978)); 6 B. E. Witkin, Summary of California Law, Torts § 732 (9th ed. 1988). "[M]edical personnel are held in both diagnosis and treatment to the degree of knowledge and skill ordinarily possessed and exercised by members of their profession in similar circumstances." <u>Hutchinson v. United States</u>, 838 F.2d 390, 392-93 (9th Cir. 1988) (internal citations omitted).

"[The] standard of care, which is the basic issue in malpractice actions, can be proven only by expert testimony. <u>Hutchinson</u>, 838 F.2d at 392. In order to defeat defendant's motion for summary adjudication on his state law claim, plaintiff *must* come "forward with conflicting expert evidence." <u>Hutchinson</u>, 838 F.2d at 392-93.

The undisputed facts before the Court demonstrate that Dr. Chen did not violate the standard of care by failing to prescribe Tramadol. As explained above, Tramadol was not medically indicated and may have posed a risk if combined with Effexor. The facts also show that Plaintiff was exaggerating his symptoms.

    D.    <u>Intentional Infliction of Emotional Distress</u>

Under California law, the elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by

14

the defendant's outrageous conduct.  Corales v. Bennett, 567 F.3d 554, 571 (9th Cir. 2009) (quotation marks omitted); Tekkle v. United States, 567 F.3d 554, 855 (9th Cir. 2007); Simo v. Union of Needletrades, Industrial & Textile Employees, 322 F.3d 602, 621-22 (9th Cir. 2003). Conduct is outrageous if it is so extreme as to exceed all bounds of that usually tolerated in a civilized community.  Corales, 567 F.3d at 571; Tekkle, 511 F.3d at 855; Simo, 322 F.3d at 622.

The undisputed facts show that Dr. Chen's refusal to prescribe Tramadol was not extreme or outrageous, but was instead a reasonable medical decision. Tramadol was not medically indicated and may have posed a risk if combined with Effexor.  The facts also show that Plaintiff was exaggerating his symptoms.

E.     Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established.  Id.  In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

The undisputed facts show that Defendants did not violate any of Plaintiff's constitutional right.  Even if they had, Defendants could reasonably believe that refusing to prescribe Tramadol was lawful in light of the valid medical reasons for doing so.  Defendants are therefore entitled to qualified immunity.

**IV.** **CONCLUSION AND ORDER**

Based on the above, Defendants' Motion for Summary Judgment is GRANTED.  The

Clerk of Court is directed to enter judgment in favor of Defendants and against Plaintiff.

This terminates this case in its entirety.

IT IS SO ORDERED.

Dated:   **February 26, 2013**                     /s/ *Dennis L. Beck*

                                                UNITED STATES MAGISTRATE JUDGE